Good morning, Counsel. Good morning, Your Honors. My name is Terry Crist, representing the respondents of the State of Arizona, and may it please the Court. I'd like to reserve three minutes for rebuttal also. Okay. Crespin pleaded guilty, stipulated to a natural life sentence, and expressly waived his right to appeal sentencing issues. This had two effects. First, it waived his Miller claim in federal habeas. Why did it waive his federal claim? I understand how it waived his Miller claim on appeal, because it apparently says so. But how did it waive it in habeas? The Supreme Court has consistently held that guilty pleas have preclusive effect on collateral review, even in federal habeas. And that goes all the way back to... As to the legality of a sentence? Well, so I think it's important to emphasize that we're not only arguing that the guilty plea is what constitutes the waiver here, but it's the combination of the guilty plea, the stipulated sentence, and the express waiver. Okay, but you start with the guilty plea. Isn't it clear that a guilty plea does not waive federal habeas claims that you've received in a legal sentence? Correct. Okay, so throw the guilty plea aside. It doesn't work for you. Okay. Let's talk about the stipulated sentence. What was his choice? What was Crispin's choice at sentencing? His choice at sentencing would be to... There were three available sentences at the time. Were there three available? Ultimately, yes. The state said, we will agree to accept your plea to guilty if you agree to take an LWOP. So the judge did not have the ability to give him a sentence of less than LWOP, did he? Well... He would have had to have rejected the plea agreement, correct? That is true. He would have to reject the plea agreement once he's accepted it in order to give that sentence. I'm referring to, I suppose, right before the plea agreement is made. The judge could have said, I won't accept the plea agreement. That is true. And then the state could have said, fine, we'll try you, we'll proceed to trial. Correct. The rules of criminal procedure allow for that. If he had been convicted at trial and sentenced to death, in this case we're coming to the federal courts with Miller and Montgomery in mind, wouldn't he be sent back for a sentencing proceeding in which the judge would have to choose between life and LWOP? If he were sentenced to death, his sentence would have been vacated. Because under Roper. Correct. And then we would have had, as we had in the previous case, a resentencing in which the judge had to choose between LWOP and life with possibility. Correct? Yes, that is correct. So in this case, the reason that he's in a different procedural posture is that he was unconstitutionally charged with death. Well, that wasn't. Rather than take his chances and go to the jury, he said, I'll plead and I'll take LWOP. The Supreme Court has held that a subsequent change in the law, such as the abolition of the death penalty with regard to a certain class of people, is not grounds to attack a plea. We're not attacking a plea. We're not attacking the plea. He pleaded guilty. We're attacking the sentence. So the question is, under this circumstance, do you think that the fact that he stipulated to the LWOP sentence precludes him from later saying that it was unconstitutional? Yes, I do. The stipulated sentence has the same preclusive properties as applied to a sentence as a guilty plea does. Could he have stipulated to execution? He perhaps. I think the one. Yes. Let's assume he said, I'm pleading guilty and I want the death penalty, and the judge said, I'm going to give it to you. Would we then say in Roper review that we can't do anything because you stipulated to it? The analysis for that comes from the Minna-Blakeledge line of cases. Yes? If your answer is yes, we would be precluded? He may be able to challenge the power of the state to bring the sentence against him, but I think that's distinguishable from what we have here. Well, isn't that exactly what he's saying? He's saying the state. I want to put aside the Jessup claims for a moment, which are a separate issue. Isn't he saying that the state didn't have the power to give me an LWOP sentence without considering whether or not I was remediable? Well, he may be saying that, but the characterization of the claim isn't simply limited to how he characterizes it. And layer upon that the fact that unlike the prior two cases that were argued, there not only was no evidence at sentencing of capacity to change, the sentencing judge refused to hear it. Is that correct? I think there's a distinction to be made there, which is we only have two things going on. Will you stop for a minute? You seem to be a really well-educated, articulate young man. Yes or no must be in your vocabulary. Did the sentencing judge in this case when Crispin was sentenced refuse to consider evidence of capacity to change? Yes or no? No. Okay. Tell me why. He refused to consider it with regard to whether he would impose that sentence in the first instance, but he did consider evidence with regard to whether to reject the plea is inappropriate. So he still was considering. We're not here on the plea. We're here on the sentence. If he rejects the plea is inappropriate, that would also invalidate the sentence. Who argued to him that the plea ought to be rejected? No one argued the plea ought to be rejected. Both sides walked in. I mean, we've all been in criminal court. Both sides walked in with a stipulated plea agreement that took death off the table for a young man, and the judge said, as any superior court judge would say, good job, boys. I accept this plea agreement, and now I don't have any discretion in sentencing. There's no evidence in this record that this judge said, I'm sua sponte going to spend time going through this plea agreement to make sure that a more appropriate sentence would have been a different one so I can force this kid to go back and face the death penalty. I mean, there's just nothing in this record suggesting that, is there? The court does say I've considered the testimony presented today in the pre-sentence report, and I find the sentence to be appropriate. He had no discretion but to impose it once he accepted the plea agreement, correct? Rule 17.4 of the Arizona Rules of Criminal Procedure say that even after accepting the plea at the change of plea hearing, he can still review the pre-sentence report and testimony presented at the sentencing hearing, and even at that later stage, reject the plea. But all he can do with that under Rule 17.4 of the Arizona Rules of Criminal Procedure is decide at that point that he's going to reject the plea agreement, correct? Yes, that is correct. He had no discretion under the plea agreement once having accepted it to sentence him to anything but LWOP, correct? If he had accepted the plea agreement, yes. And I would add that I think we are in a different situation from Miller on that score as well because we have to ask who ultimately was the party responsible for his inability to do so, and the answer is it's Crespin, not the state. Did the state offer him life with the possibility of parole? Not that I'm aware of. Didn't you play some role in his inability to get a lesser sentence? It's true, but he ultimately is the one who stipulated to the sentence. Because he was unconstitutionally, I'm not blaming anybody because nobody knew Roper was coming down, he was unconstitutionally faced with the possibility of death. That leveraged him into a situation where he said, I'd rather live than die. I don't think he made a conscious choice between LWOP and a lesser sentence, did he? The voluntariness of his sentence is not at issue here, and I think that question would ultimately go to the voluntariness of the plea. Nobody is attacking the plea. The plea is to guilt. But I think the plea and the sentence here are inexorably linked together in that stipulating to the sentence is part of the benefit of the plea. Well, he got no benefit. The problem is that we now know he got no benefit whatsoever from the plea, correct? Correct, but we only know that after the fact. But we have retroactive cases, so we're supposed to look after the fact. We look after the fact with regard to the Miller claim, but Brady tells us we don't reopen pleas and stipulated sentences just because the law changed and it would have changed the calculus. But we're not reopening the plea. He says, I got an illegal sentence, and you're saying, well, you agreed to the illegal sentence. At least, I know you don't concede it was illegal, but at least that's your first argument, isn't it? I want to focus just for a minute here. The Arizona Court of Appeals concluded, according to my reading, that there had been no Miller violation because Cressman had not been sentenced under a mandatory sentencing scheme and because the trial court had discretion to reject his stipulation to a sentence of natural life. What's your take on that? I believe that you're referring to the Jessup claim, as we're calling it. My take is that the court was correct. Miller may have listed Arizona as an ELOP state. That may have even arguably been true at the time, but that was ultimately remedied with 13716, and Vera, which is the previous state court of appeals decision, held that that was retroactive and applied in such a way that it was no longer mandatory. If it's retroactive to his case, is he now entitled to parole? No. How does it help him? It indirectly affected his sentence by breathing life back into the options he would have had at the time. We know that because had he ultimately received that sentence, today he'd be on the cusp of parole eligibility. Retrospectively, looking back on it, it was a meaningful choice. Are you saying that if he had told the judge, I want to be executed. I don't want to spend a long time in jail. My life is over. I've done a horrible thing. I want the state to put me to death. And then Roper came down. Are you saying that the state would argue that his stipulation to a death sentence could not be reviewed on habeas? No. I think under the men of Blakeledge exception that Klaas talks about last term, he might be able to make a challenge to the power of the state. Might? He would. He could make a challenge because it would be essentially a facial attack. It doesn't really hurt you to say he'd win, does it? I mean, you're arguing you have a different case, and I understand that, but you can give up a little here. Surely we wouldn't let the state execute him under those circumstances, would we? He probably would be able to. Take the probably out. We'll fight it. He would be able to challenge it. So why is this different? Tell us why this is different. Because this isn't a facial attack on the sentencing statute, which is what I think ultimately you have to manage. The Jessup attack is a facial attack, isn't it? I'm not as familiar with the Jessup. Well, the facial attack is it really was an LWOP statute. You say you've got an answer to that, and that's fair. We might have to deal with that, but that is a facial attack, isn't it? Yes, I think that part would be a facial attack. The other component, perhaps a substantive component of the Miller, I think would not be a facial attack. So we could at least, under your view, consider the Jessup claim. I think the other problem we have, though, is if you look at the class. Can you answer the question? No, because I still think it would be inconsistent with the admissions he makes in his plea. So he's stipulating to the National Archives. Well, so then I don't understand your distinction of the capital case then. You said the capital case, he would be making a facial attack on the sentence. I said he's going to make a facial attack here under Jessup, and then you said he can't do that because he pleaded. So I'm not sure I understand that distinction. I think the distinction would be, you know, honestly, now that I think about it, I think you're probably right. I don't see the distinction either. I think perhaps he would be able to make that claim, but ultimately with the Jessup claim, I still think we would prevail. And you've argued why you should win on that one. I understand. Correct. And I think another reason we would win on that claim, beyond the argument I've made, is the determination that 716 remedies the situation is ultimately a determination of state law, not federal law. So the question is, under the sentencing scheme at the time, could he have received another sentence? And that's really a question of what the state remedies provide. Now we have retroactivity on retroactivity. If he couldn't have received a lesser sentence under the sentencing scheme at the time he was sentenced, the fact that the Supreme Court later said, oh, we think he could have, really doesn't change the matter, does it? I think it does matter in the sense that the Supreme Court was looking at the law existing at the time but didn't have the benefit of 13716 review. And I think we can look at the retrospective properties of 13716. I would like to reserve the remaining two minutes for rebuttal. Thank you. Good morning, counsel. May it please the Court. Good morning. Molly Briscus on behalf of the Arizona Justice Project for the petitioner Freddie Crespin. First, I'd like to address the state's argument about express waiver. First of all, this argument that Mr. Crespin expressly waived his right to a collateral attack was not raised until the reply brief in this Court. It was not raised in opposition to it. Let's assume that they haven't waived it. So address it on its merits. This Court held in Lemke v. Ryan, which is 719F3rd, that a waiver of collateral attack must be expressed and that a plain waiver of appeal does not suffice. If you look at the terms of the waiver that Mr. Crespin entered into in his plea agreement, it was a waiver of his direct appeal. And I quote from the record, at his sentencing hearing, the sentencing court said, when you entered your plea agreement, I told you, and I'm sure your other attorneys and Mr. Sherb told you, you have given up your right to file an appeal. You do have a right to file a petition for post-conviction relief. So he clearly retained his ability to file a PCR, and he clearly did not waive his right to file a 2254 petition in this Court. Mr. Crespin says, if I want to construct his argument correctly, he says, even if the plea agreement didn't waive your right to seek habeas, by stipulating to this particular sentence, you lose. I don't know whether it's a waiver or whether it's a loss on the merits. You know, normally when a party stipulates to something, we don't let them later come in and challenge it. An LWOP sentence could have been constitutionally imposed. I mean, it's not facially unconstitutional. It has to go through certain steps. So why, under this circumstance, doesn't your stipulation or your client's stipulation to the LWOP sentence end the analysis? Well, going back to the appellate waiver, this Court has held that an appellate waiver doesn't apply when the sentence violates the law. No, I'm not talking about the waiver. Let's assume the waiver doesn't – you haven't waived your right to seek habeas on the merits because you agreed to the sentence. How does that affect your claim? Because it was an unconstitutional sentence. And the cases cited by the State talk about this exception when it's beyond the power of the State to do something. In this case, it was beyond the power of the State. But is it beyond the power? I think if I were going to rephrase the argument Mr. Chris was making, he'll have an opportunity to tell me I was wrong when he gets back up. But what he's really saying is it's not beyond the power of the State to impose an LWOP sentence here. It may not have followed the – you may be arguing they didn't follow the correct procedures in doing so, but they didn't – it wasn't beyond their power. They can impose LWOP on juvenile offenders as long as the correct procedures and the correct sort of substantive analysis is made. You waived having that substantive analysis done, in effect, by accepting the sentence. Why doesn't that end the analysis here? Because there – it's not just that the – Miller said more than just the State has to follow a certain procedure. There's an entire class of people that – juveniles that were sentenced before Miller that are not irreparably corrupt, that are not the rarest of the rare. And for those juveniles, their sentence is unconstitutional. So the fact that Mr. Crespin stipulated at the time, before Miller came down, we don't know if he's one of the rarest of the rare or the irreparably corrupt person who was sentenced to LWOP. So the fact that he stipulated to it and pled guilty doesn't change the fact that he may be in that class of people that was beyond the power of the State to impose. So your position, I gather, is that it really – what the judge had before him in this case, the fact that he stipulated to the sentence, he stipulated to the whole thing, because he was a young person, automatically the plea regarding the sentence is just out. There's nothing else to consider. Is that a fair statement? Yes. No way to remedy it. I think the remedy is that he would be resentenced under a constitutional sentencing hearing where a judge considered the type of evidence that he is required to consider to make that determination about Mr. Crespin. See, this case is different than the other two we've heard this morning because in the other two, I think there's plenty of evidence that at least a judge heard evidence about the transient immaturity of youth and those sorts of things. Here, because the sentence was agreed upon between the parties, no judge ever had an opportunity to sort of think about that stuff, which is why I'm focusing on didn't, in effect, your client prevent a judge from doing that sort of analysis by stipulating to the sentence? I understand it was a great decision because it took death off the table, but what's the effect of that in this case? I don't think there's an effect because I think that no matter what the parties agreed to, Miller was not complied with, and so you have to remedy that because it's an unconstitutional sentence for this defendant. So let's assume we're today. Everybody knows about Muller and Montgomery. And there's a whole bunch of charges against the defendant in addition to the murder charge, and the state says, we'll drop the other charges, which, you know, and if you agree to plead guilty and stipulate to LWOP, and the defendant says, I agree, could he then bring a Miller-Montgomery claim? I think that there would have to be something on the record where the judge determined whether or not he was irreparably corrupt or whether his crime was a result of transient immaturity, like some sort of factual basis before he could impose that sentence still today. Even on the agreement of the defendant? Yes. What, if we're in EDPA land, what clearly established law tells us that? Well, there's not... You're positing it is for Miller and Montgomery, but they don't deal with guilty pleas under which a sentence was stipulated. So where's the EDPA stuff for us to hang on to? Well, I don't have a case for you under EDPA that says that's what's required. I think that we could read into Montgomery and Miller by saying that there has to be some sort of finding and we're not going to dictate what that looks like. And the defendant can't waive it? Even to secure the dismissal of other potentially serious charges? I mean, make it a real deal where they said, look, we're going to charge you and your mother and we're going to go after her with the death penalty, but if you plead and take a lop, we'll drop the charges against your mother. So a real benefit was obtained. Could he, under that circumstance, later say, well, I made the deal, but now I want to... I'm making a Miller-Montgomery challenge. I think for the sentence to be constitutional, that there has to be some sort of finding on the record, some sort of laying of consideration of the factors that a judge makes. I think this is probably analogous to an Atkins case where there has to be some sort of determination before you execute someone about their intellectual ability. This is slightly different, I think, because the reason your client was in this absence choice at the time was that, although the state didn't know it, the capital charge was unconstitutional. So had that charge not been brought, I assume, even if he pleaded guilty, the judge would have had a choice between a lop and a lesser sentence. So it's hard to reconstruct this in the rear-view mirror. We're just trying to figure out what the effect of the non-objection and, indeed, agreement of the sentence should be under these circumstances. Really, by taking this position that's inalterable, you really tie the hands of a defendant that has offered either of the pleas subsequent to Miller that my colleagues have suggested. He may have every incentive to take something else that would get him right back where he started from, but you're saying he's got to be resentenced. If he doesn't get resentenced, it's just unconstitutional. Is that really your position? Well, I think that this Miller changes the whole sentencing landscape for children and for people under 18. And so the myriad of different circumstances why a defendant would take one plea or another, there's still this kind of crucible of determining whether or not the person's irreparably corrupt or transient in maturity. And I guess I can't speculate how that possibly could impact future defendants. I think for Mr. Crespin, the fact that his sentence is unconstitutional, the fact that he stipulated to the plea at the time in order to avoid the death penalty, it doesn't change the fact that his sentence is unconstitutional today. Does the mandatory language of Miller Montgomery mean mandatory under state law or mandatory as a matter of fact? I guess I'm not quite understanding your question. Is it a mistake of... Is it a characterization of state law or is it a legal conclusion? I think that's the question the judge was asking. Yeah. I think it's a question... I think it's a legal conclusion about whether or not the sentencing judge... You know, what the sentencing scheme was in effect at the time. And for Arizona, the only sentence that was available for Mr. Crespin was natural life. Well, no, there was a sentence that was... Well, putting aside the agreement, there was a sentence that was available in Arizona. He could have been sentenced to life with the possibility of clemency. Correct? Correct. I mean, absent the plea agreement. But we know from Graham that that's not a sufficient substitute for the opportunity for parole. Right. So is this... Getting back to Judge Hawkins' question, which I'm interested in too, let's assume that the Supreme Court in Montgomery got it wrong as a matter of Arizona law. Because all these... A lot of these defendants in the Vera case actually received sentences with possibility of parole. So as a matter of Arizona law, they could have been given that sentence. Whether or not they could have gotten parole given the statutory scheme at the time is a separate question. So assume the Supreme Court had Arizona law wrong. Are we bound by what they said in that case? Or are they making... Is it a legal conclusion that as a practical matter, Arizona didn't have any alternative except El Wap at the time? You're saying what the Supreme Court said in Miller about the states that had mandatory sentencing schemes? Because the Chief Justice, in his most recent opinion in Valencia, said that's not quite right. You know, we really didn't have a mandatory scheme at the time, but we fixed it. But even if you think we did, we fixed it with 716. So that may be wrong as a matter of characterization of state law, but is it a legal conclusion or is it a state law description? I think that's a legal conclusion, that that was the sentencing in effect at the time, and that's what the Supreme Court looked at when they were looking at states around the country. I think this is your argument. You're perfectly free to tell me, no, that's not my argument. But the word mandatory, it means if at the point of sentencing the judge was prohibited, as this judge concluded he was, from considering any evidence about youth, et cetera. Is that your argument? That's what mandatory means? Yes. Okay. Remarkably, our panel has no additional questions. All the able lawyers this morning have tired us out. But we're going to give them to you. Yourself included. Thank you. Thank you for coming. Thank you very much. We have a little rebuttal time here, counsel. It was Crespin who removed the issue of what sentence he should receive by stipulating. That included whether he qualified for that sentence. Ultimately, it would include any findings necessary under Miller and Montgomery. He would have been better off to ask for the death penalty. Looking back as we are, he would have been better off to say, judge, give me the needle. If he had asked for the death penalty, he would be in a different position than he is today. But again, that involves considerations of things that he wouldn't have known at the time. And Brady tells us that we don't second-guess the pleas and stipulated sentences simply because the law becomes more favorable to the defendant later. I think the other thing worth pointing out about the appeal is it is true that he retained the ability to file a PCR. However, that PCR would be very limited. One of the things you could not argue in that PCR are issues that you waived through your appeal, or through your plea, rather. And so routinely, state courts refuse to consider issues on PCR. That would have been waived if the... Does that mean we engage in de novo review here because under your view he couldn't have raised the merits of his claim in state court? Well, he shouldn't have been able to raise the merits. In fact, it appears that the state courts... They entertained him. They entertained him. So arguing what the state PCR court should have done, you're disagreeing with the state PCR court, right? I think the state courts alternatively could have procedurally barred him. But it didn't? But it didn't. Okay. But the point, I think, from that is we should not say that simply because he retained the right to file a PCR that we don't have preclusion here because of the plea. Well, that's the question I was trying to ask you, and it's a little confusing to me. The state PCR court treated his claim on the merits. It did. Once the state decides that it can treat a claim on the merits, isn't that our job too? In other words, whatever effect his plea had or his agreement was a matter of state law. And the state PCR court said, notwithstanding that, we'll move on to the merits of your Miller claim and reject them. So it seems to me the state courts already told us what to do, that the plea doesn't matter with respect to addressing the claims. I disagree, Your Honor. I think independently on habeas review, it should be bound by the preclusive effects of the plea. Even though the state court doesn't treat it as preclusive? Correct. Well, how does that correspond with comity? Well, because the court had the ability to do it. It just simply didn't exercise it. Thank you, counsel, for your argument. Thanks to both counsel. We appreciate the arguments of all counsel this morning. It's been very helpful in these complex cases. This case that we just argued is submitted, and the court stands adjourned for the day. All rise.
judges: Hawkins, M. Smith, Hurwitz